54 CCPA
**Application of James M. GILCHRIST, Jr.**
**Patent Appeal No. 7519.**

United States Court of Customs and Patent Appeals.

Oct. 6, 1966.

K. Wilson Corder, Atlanta, Ga., for appellant.

Clarence W. Moore, Washington, D. C., (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals [1] affirming the rejection of claims 1–3 and 5–10 of application serial No. 836,391, filed August 27, 1959, for "Method and Apparatus for Stamping or Otherwise Marking." All claims are to method. Claims 4 and 11 were allowed by the board.

The method of the appealed claims is one for stamping cigarette or other packages with tax stamps or the like. It appears that cigarette manufacturers deliver cigarette packages in cartons without tax stamps which must be affixed according to the laws of the various states before sale. This has involved removal of the packages from their cartons. One stated object of the invention is to stamp the individual packages while in the carton, without removing them. To this end the carton is formed with cut-out windows of suitable size and placement, giving access to a face of each individual package, such as the bottom. The main object is to print the tax stamps on the packages by the application of suitable radiant energy to a previously sensitized surface of the package responsive thereto.

1. Consisting of Examiners-in-Chief Manian and Dracopoulos, the latter writing the opinion, and Acting Examiner-in-Chief Angel.

The application describes apparatus by which the claimed method may be carried out having a passage to receive a carton of cigarettes, triggering switches, timer, counter mechanism, and a stencil or "press-plate" having suitable indicia through which the radiant energy passes to print the desired information simultaneously on each of the packages after the manner of exposing photographic prints through a negative. Irradiating mechanism is contained in a compartment 11 and is thus described:

> In 11 there is contained a *conventional* irradiating mechanism capable of generating by way of split-second exposure, heat, infra-red, ultra-violet, UHF, micro, or other rays or vibrations; which will change immediately, permanently, and visibly, according to a pre-determined pattern, and without subsequent "fix," the coated bottom of a package of cigarettes. *Well-known* copying machines such as the "THERMOFAX" equipment manufactured by the Minnesota Mining and Metallurgical [sic] Company, are typical of and contain such irradiating devices. [Emphasis ours.]

To sensitize the cigarette packages for such marking by radiant energy, an appropriate part of the package is coated with a material which is stated to be

> a matter of choice and mechanical skill dictated by the particular type of irradiation contemplated in a given application. For example, if heat is used, a solution such as that taught by Patents Nos. 2,663,654, 5, 6, 7; 2,710,-263, 2,880,110, or Re. 24,554, taken singly or in combination, may be used; while if light (ultra violet), sound (including HF, UHF, or Ultra-sonic) or like or related or other vibrations are used, vehicles suitable to their irradiation or development on the bottoms or other selected portions of cigarette packages will be employed in appropriate solutions.

The specification points out, and appellant's brief makes much of the fact, that the inner wrapper of the cigarette package may carry the sensitive coating and that it may be exposed or developed or activated through the outer cellophane wrapper. The only appealed claim mentioning this feature, however, is claim 1 and this limitation has no bearing on the ground on which it stands rejected. As illustrative, we quote claim 1:

> 1. The method of stamping the bottoms of cigarette packages or the like, which consists of first coating the bottoms of such packs with a solution color responsive to heat, light, or other vibratory stimuli, wrapping the packs with cellophane in a conventional manner, placing the packs in cartons having windows registering with said coatings, and then subjecting the sensitized portions thereof to split-second irradiation to which the coating is sensitive, in the face of a fixed pattern, whereby the image of a revenue stamp or other designation is permanently affixed to the packages and without the employment of additional stabilizing factors.

There is some confusion in the briefs as to the grounds of rejection but the record makes it clear that the Patent Office is correct in its view that claim 1 is rejected only on the ground of insufficient supporting disclosure for the inclusion of "other vibratory stimuli * * *." Claims 2, 3, and 5–10 stand rejected as obvious (under 35 U.S.C. § 103) in view of the following references:

Malocsay    2,129,701    Sept. 13, 1938
Stallmann    2,755,203    July 17, 1956

Claims 7–9 are further rejected, with claim 1, on the ground of insufficient disclosure to support, in claim 7, the italicized words in the limitation "heat, light, *or vibratory stimuli*," in claim 8, "heat, light, *vibratory or other stimuli*," and in claim 9 the same (both emphases ours).

Malocsay discloses a conventional 10-pack carton of cigarettes modified by the addition of five cut-out oval windows through which are exposed the central bottom portions of all ten cigarette packages for the purpose of making it possible to affix tax stamps thereto without open-

ing the carton. This aspect of appellant's invention is therefore old, leaving for consideration whether the claimed invention as a whole is patentable by reason of the manner of marking the packages which are exposed through the windows in the carton. Malocsay contemplates primarily the use of conventional adhesive stamps or decalcomanias. He also says, however, that "printing methods" may be used.

The Patent Office position is, in the words of the examiner's Answer, in turn adopted by the board:

Malocsay discloses placing cigarette packs into an apertured carton and printing a tax stamp on the packs through the apertures. Obviously, any conventional printing process could be employed in the teaching of Malocsay. To use a printing process such as disclosed in Example IV of Stallmann would therefore be an obvious selection. Heat-produced color reaction printing processes were in common use as illustrated by appellant's reference to several patents disclosing such processes.

In discussing Stallman we bear in mind that appellant's method involves the use of any suitable coating material which is initially colorless but which develops into his printed stamp when exposed to suitable irradiation. He does not concern himself, as the above quotations from his specification show, with the particular composition of the coating or with the particular kind of irradiation, regarding these as "a matter of choice and mechanical skill * * *."

While Stallman is concerned with making hectograph sheets for use in spirit hectographs, his disclosures are not limited thereto but are concerned broadly with converting "certain colorless leuco triarylmethanes into their colored forms * * *." Example IV, relied on for the rejection, is not concerned with hectographs or with subsequent chemical development of leuco (colorless) materials, as appellant would perhaps like us to believe. Since it speaks for itself, we quote it in full:

One part by weight of the dry stabilized leuco crystal violet of Example III was thoroughly mixed with 0.5 part of triphenylchloromethane to give a colorless powder with which the surface of a paper sheet was coated by working some of the powder with a spatula into the pores of the paper surface. The excess powder was then removed by turning the paper upside down and a metal stencil was placed over the coated paper. Exposure of this system to a source of radiant heat (holding it over an electrically heated hot plate or under an infrared heating bulb) produced instantaneously a permanently fixed, very strong and sharp pattern in which the shielded areas (underneath the metal) had remained white while all the directly exposed area showed a deep violet-blue coloration.

The powders mentioned in Example IV may be incorporated in a binder such as gelatin, casein, albumin, starch, and dextrin.

It seems to us that this is a clear description of a stencil printing method, such as appellant proposes to use, wherein a colorless (leuco) coating composition is coated on paper and turned into a readable pattern by exposure to radiant heat through a stencil. Thus the method of printing called for by the appealed claims, at least with respect to sensitizing the paper and producing a visible image, is shown to have been known to those skilled in the art. Indeed, the specification appears to assume this fact.

■ We see no error in the Patent Office view that it would be obvious to use such a printing method to mark packages in the windowed carton shown by Malocsay, and accordingly affirm the decision of the board that claims 2, 3, and 5–10 are unpatentable in view of the prior art.

The remaining issue is the correctness of the rejection of claim 1 for insufficient

support in the specification, it being unnecessary, by reason of the foregoing, to review the correctness of this rejection as applied also to claims 7, 8, and 9. As we view this rejection, it really amounts to saying that since the claim clearly calls for the use of vibratory stimuli *other than* heat and light, which are also specified, there must be support for such *other* stimuli. The objection is that there is no disclosure of any operable coatings suitable for development by *such* "vibratory stimuli."

When faced with this objection, appellant submitted an amendment which added references to the literature describing, in patents and publications, color-sensitive materials responsive to light, ultraviolet, sound, and ultrasound.[2] The most relevant reference indicates that

some color changes may be produced in *solutions* by "ultrasound." We note however, that there is no disclosure of what frequencies may be included in "ultrasound." Moreover, the Patent Office says there is no disclosure of a "coating" which will change color. As pointed out by the examiner:

> The fact that a solution may change color when subjected to ultra-sonic vibration is a far cry from disclosing a coating suitable for producing a pattern on a sheet with sound.

We agree with this position, as did the board, and conclude that there is no disclosure adequate, under 35 U.S.C. § 112, to support the expression "other vibratory stimuli" set forth in claim 1.

The decision of the board is affirmed.

Affirmed.

2. A question was raised on appeal as to whether "new matter" was introduced by this amendment. Since we do not see that it adds anything to the description of the claimed method and in no way changes the invention described, we do not regard it as "new matter" within the prohibition of 35 U.S.C. § 132. Its admission was found below not to be critical with respect to the issue of supporting disclosure in any event, however, and we agree with that finding.